UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA L. POLAND,

       Plaintiff,                                    Case No.  1:15-CV-399

v.

                                                                 HON. RAY KENT

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Laura Poland seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-nine years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.37, 87.) She completed high school, and was previously employed as a bagger. (PageID.61, 79–80.) Plaintiff applied for benefits on December 22, 2011, alleging that she had been disabled since March 31, 2010, due to a cognitive impairment, PTSD, borderline personality disorder, acid reflux, depression, a flipped colon/stomach pains, and problems associated with her right shoulder, wrist, and knee. (PageID.87, 159–165.) Plaintiff's application was denied on April 3, 2012, after which she requested a hearing before an ALJ. (PageID.104–108.) On June 13, 2013, Plaintiff appeared with her counsel before ALJ Janice Bruning for an administrative

hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.58–82.) In a written decision dated September 18, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.37–57.) On February 20, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four.

---

[1]
1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Bruning determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  (PageID.42.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) right shoulder tear; (2) right knee tear with surgery and osteoarthritis; (3) obesity; (4) learning disorder; (5) depression; and (6) anxiety.  (PageID.42.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.44–46.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, rope, or scaffolds, should only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, bend or twist, could occasionally push/pull and reach overhead with the right upper extremity and occasionally use the right lower extremity to push/pull.  Based on the claimant's mental impairments, she should be limited to 1-3 step simple, routine and repetitive tasks involving no public contact and no more than occasionally interaction with co-workers and supervisors.  The claimant should not be required to perform work involving "teamwork" in order to complete job tasks and should not work in an environment requiring more than occasional changes in work/duties and decision-making.

(PageID.46.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work.  (PageID.50.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE identified the following jobs as

representative of work that Plaintiff could perform: packager (15,000 Michigan jobs and 534,000 national jobs), cleaner/ housekeeper (12,000 Michigan jobs and 524,000 national jobs), and conveyor line bakery worker (16,000 Michigan jobs and 235,000 national jobs). (PageID.79–81.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.51.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her alleged onset date through the date of the decision. (PageID.51–52.)

## DISCUSSION

Plaintiff's sole claim of error is that the ALJ failed to afford sufficient weight to the opinions from two of her treating physicians. The first opinion, dated July 9, 2012, is from Plaintiff's treating psychologist, Dr. Amy Borgman, PhD. (PageID.586–590.) Among other things, Dr. Borgman opined that Plaintiff was seriously limited, but not precluded, in her ability to function in the areas of remembering work-like procedures, understanding, remembering, and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, responding appropriately to changes in a routine work setting, and being aware of normal hazards. (PageID.588.) Plaintiff was unable to perform activities such as maintaining attention for two hour segments, maintaining regular attendance and punctuality, working in coordination with or proximity to others without being distracted, completing a normal workday and workweek without interruptions, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and respond appropriately to criticism from supervisors, and dealing with normal work stresses. (PageID.588.) Plaintiff furthermore could not interact appropriately with the public, and was seriously limited but not

5

precluded, in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, and could be expected to miss work more that four days per month. (PageID.589–590.) On April 18, 2013, Dr. Borgman stated that the above opinion represented Plaintiff's then current limitations as well. (PageID.725.)

Plaintiff also relies on a May 30, 2013 medical source statement from Dr. Gretchen Goltz regarding Plaintiff's limitations due to her headaches. (PageID.742–745.) Dr. Goltz indicated that she had been treating with Plaintiff for nine years, and that Plaintiff suffered both migraine and vascular tension headaches roughly four times a month, lasting five to six hours. These headaches were of such a severity that they prevented Plaintiff from performing all activities, and were accompanied with nausea, phonophobia, photophobia, throbbing pain, an inability to concentrate, mood changes, exhaustion, malaise, vertigo, visual disturbances, impaired sleep and appetite, and pain made worse with activities (PageID.742.) Consequently, Dr. Goltz indicated that since February 2011, Plaintiff was incapable of even "low stress" work. (PageID.744.) She stated Plaintiff would be unable to stay at work when she had headaches, and Plaintiff could be expected to miss work more than four times per month. (PageID.745.) She also noted that in a typical workday, Plaintiff would be off task twenty-five percent or more of the workday. (PageID.744.)

The ALJ assigned "some" weight to Dr. Borgman's opinion and "no weight" to Dr. Goltz's opinion. (PageID.49–50.) Plaintiff claims the ALJ erred in failing to give sufficient weight to both opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 375–76 (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

> A.  *Dr. Borgman*

As noted above, the ALJ gave Dr. Borgman's opinion some weight. She noted she accommodated Plaintiff's mental restrictions by limiting Plaintiff to 1-3 step simple, routine and repetitive tasks with no public contact and only occasional interaction with co-workers and supervisors. The ALJ also found Plaintiff could not perform tasks involving teamwork to complete job duties and could not work in an environment requiring more than occasional changes in work/duties and decision-making. (PageID.50.) The ALJ noted however that:

> Dr. Borgman's other findings, which included that the claimant would likely be absent from work more than four days per month, are not supported by the record as there is no indication that the claimant requires such frequent treatment or is unable to tend to her activities of daily living on a regular basis as a result of her mental capacity. Rather, the claimant lives alone in a house and is able to independently care for her personal hygiene needs, prepare simple meals, wash the dishes, do laundry, make her bed, dust, vacuum, sweep, mop, sew, shop, drive, go to church on a regular basis, handle funds, and care for pets. (Exhibits 5E, (E, and 9F).

(PageID.50.) The ALJ's decision is entirely consistent with the above authority and supported by substantial evidence. Importantly, Plaintiff does not disagree with anything contained in the above excerpt. Rather she contends that the ALJ was required to give more weight to the opinion of Dr. Borgman than the opinion of Dr. Dennis Mulder, a consultative examiner.[2] (PageID.759–760.)

As an initial matter, Plaintiff appears to mistakenly believe that Dr. Mulder was also the agency consultant who authored the Commissioner's Disability Determination Explanation (DDE). (PageID.759–60.) A review of the DDE demonstrates, however, that Dr. Judy Strait was

---

[2]On March 22, 2011, Dr. Mulder opined that Plaintiff had a "fair" potential for "becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis . . . pending her compliance with psychiatric treatment. The patient appeared to have no difficulty understanding, remembering, or following through with simple instructions, and there appears to be few restrictions to her ability to perform simple, repetitive, concrete tasks." (PageID.580–581.)

the agency consultant to whom the ALJ assigned some weight.  (PageID.49, 87–101.)    While the ALJ did not assign a specific weight to Dr. Mulder's opinion, the ALJ appears to have adopted it, noting that she agreed with the doctor's assessment of Plaintiff's abilities.  (PageID.49.)  With that in mind, the Court finds that Plaintiff has raised a claim that the ALJ was required to give more weight to the opinion of Dr. Borgman, than to the opinion of Dr. Dennis Mulder.[3]

Plaintiff correctly states that Dr. Borgman has treated Plaintiff on several occasions and qualifies as her treating physician.  This fact would justify a decision to give more weight to the doctor's opinion than to others in the record.  *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  As discussed above, however, the ALJ found Dr. Borgman's opinion was inconsistent with other substantial evidence in the record – namely Plaintiff's daily activities.  As such, the ALJ was not required to give controlling weight to the opinion.  *See* 20 C.F.R. § 404.1527(c)(2).  Instead, when there is contradictory evidence, it is the ALJ's role to weigh the conflicting medical opinions.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  The ALJ does so using the factors found at 20 C.F.R. § 404.1527(c).

An examining relationship is only one of the factors an ALJ is to consider when weighing medical opinions.  *See* 20 C.F.R. § 404.1527(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and

---

[3]The Court concludes Plaintiff has not raised a cognizable claim against the agency consultant.

non-examining status [is] only one of several relevant factors [.]"). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). The ALJ acknowledged the limited examining relationship that Dr. Mulder had, but nevertheless found it to be consistent with Plaintiff's activities of daily living and treatment notes in the record, while Dr. Borgman's opinion was not consistent. Accordingly it was not in error for the ALJ to give more weight to Dr. Mulder's opinion than to Dr. Borgman's opinion.

   B.  Dr. Goltz

At step two, the ALJ found that Plaintiff's headaches did not amount to a severe impairment. In her discussion the ALJ noted Plaintiff's treatment with Dr. Goltz, and also discussed and the doctor's subsequent opinion:

> The claimant complained of "periodic" migraine headaches in May 2009 and February 2010 (Exhibit 7F, pg.16) and not again until September 2010 (Exhibit 7F, p. 101), at which time she reported that they occur intermittently and that she was improving (Id.). The claimant's primary care physician, Dr. Gretchen Goltz, opined that the claimant's headaches were likely from muscle tension in her neck and simply recommended neck stretches and range of motion exercises as well as Tylenol or Motrin as needed. During a visit on February 24, 2011, the claimant remarked that her migraine problem had not changed (Exhibit 7F, p.162). Accordingly, the undersigned finds that the evidence does not show that the claimant's headaches have resulted in more than minimal work-related limitations.
>
> While the undersigned notes that the claimant's primary care physician rendered an opinion as to the effect of the claimant's headaches in Exhibit 22F, the undersigned accords it no weight for the following reasons. The claimant's primary doctor reported that her headaches occur four times a month and prevent the claimant from all activities. Per this report, the claimant's primary doctor indicated that this has been going on for nine years. However, the claimant engaged in substantial gainful activity through March 2010 and only stopped then due to knee problems, not headaches. She also

>performs various activities of daily living on a regular basis as she lives alone in a house, including caring for pets and doing different chores (Exhibits 5E, 6E, and 9E).

(PageID.43.) The Commissioner acknowledges that the ALJ was mistaken in stating that Dr. Goltz's opinion concerned Plaintiff's condition for the prior nine years. A correct reading of the opinion shows that Dr. Goltz stated Plaintiff's limitations first applied on February 24, 2011, well after Plaintiff had ceased substantial gainful activity. (PageID.745.) The Commissioner argues, however, that the decision may be upheld on the remaining reasons articulated by the ALJ. The Court agrees. *See Kelly v. Astrue*, No. 3:08-CV-271, 2009 WL 2591761, at *8 (S.D. Ohio Aug. 20, 2009) (finding an ALJ's error did not require reversal when an ALJ provided other reasons, supported by substantial evidence).

The ALJ found the doctor's opinion to be inconsistent with Plaintiff's daily activities. As Plaintiff stated in her function report, she lives alone in a house. (PageID.212.) She takes care of a pet and has no problems handling her personal care. She is able to prepare meals, and Plaintiff has had no changes in her cooking habits since the beginning of her impairments. (PageID.214, 221.) Plaintiff can clean and do laundry, and does not need encouragement in doing those activities. (PageID.214.) She goes out two to three times a week, goes shopping, and can drive a car. (PageID.215, 223.) Her hobbies include watching TV and crochet, and there have been no changes since the onset of her impairments. (PageID.216.) She spends time with others every day, and goes to church. (PageID.249.) When asked how her illnesses, injuries, or conditions limited her ability to work, Plaintiff did not cite any issues due to migraines. (PageID.245.) The Court finds the ALJ reasonably found these activities to be inconsistent with the limitations the doctor provided.

11

Plaintiff does not quibble with any of the above, but claims it was in error for the ALJ to note Plaintiff's conservative treatment for her migraines. According to Plaintiff, "the Commissioner failed to realize that the only course of treatment for migraines is of a conservative nature," and that "the only course of treatment [was] to take the prescribed medications and rest for the period of time needed, which in the Clamant's case consists of lying down in a quiet darkened room for 5-6 hours to alleviate the pain." (PageID.759.) Plaintiff provides no support for this assertion. The record shows that the ALJ accurately described Plaintiff's treatment history for her migraines. She went long periods without complaining of migraines, and Dr. Goltz did prescribe neck stretches and range of motion exercises in addition to medication. (PageID.451.) On February 24, 2011, Dr. Goltz noted that Plaintiff's migraines were less frequent than she later opined – noting they occurred only every couple of months during which Plaintiff missed one day of work. (PageID.510.) When a CT scan of Plaintiff's head found a chronic injury, Plaintiff declined a referral to a neurologist. (PageID.603.) While Plaintiff might disagree with what constitutes conservative treatment, this does not mean the ALJ erred in finding the record inconsistent with the doctor's opinions.

Accordingly, for all the above reasons, Plaintiff's claim of error is denied

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: September 7, 2016          /s/ Ray Kent
                                  RAY KENT
                                  United States Magistrate Judge